ELVIRA JUANA MANUELA JOAQUINA GARCÍA FERNÁNDEZ, Plaintiff and Appellee, v. JOSEFA AGUAYO ET AL., Defendants and Appellants.

No. 3898.   Argued April 9, 1928.—Decided February 4, 1929.

*José Tous Soto* for the appellants. *R. Sancho Bonet* for the appellee.

Mr. Justice Texidor delivered the opinion of the court.

This is one of the oldest lawsuits in Porto Rico. We might begin this opinion with words similar to those used in the opinion of this court in the case of *García et al.* v. *Aguayo et al.,* 32 P.R.R. 392, which is really this same suit. It was said there:

"For about twenty years the plaintiff in this case has been contending for an acknowledgment of her rights as the legitimate daughter of Juan García Villaraza and his wife, Manuela Fernández y Rodríguez. *Aguayo et al.* v. *García,* 11 P.R.R. 263; *García* v. *Aguayo et al.,* 29 P.R.R. 954."

Five years have gone by since that was said; but in all other particulars that paragraph might be repeated in beginning the present opinion.

The plaintiff, after alleging that Juan García Villaraza died intestate on April 27, 1899, while married to Josefa Aguayo and that his only heirs were the plaintiff, the other daughter, Graciela García, and the widow, Josefa Aguayo, maintained in her allegations that she was the legitimate daughter of Juan García Villaraza and Manuela Fernández who were husband and wife before her father married Josefa Aguayo, the plaintiff's mother having died at the time stated in the complaint. The plaintiff prayed that she be declared

a legitimate daughter and heir of Juan García Villaraza and that the declaration of heirship made by the District Court of Ponce in favor of Graciela García and Josefa Aguayo as the sole heirs of Juan García be set aside, as well as its legal consequences as regards the hereditary estate and its transmission and as to the perception of fruits, rents and profits, and also as to the purchase of certain properties by defendant Josefa Aguayo with the income from the hereditary estate.

The defendants denied in their answer the plaintiff's status of legitimate daughter and also denied the other material averments and the damages, at the same time pleading prescription, the pendency of another suit and other defences.

After trial the District Court of Ponce rendered judgment on January 27, 1926, sustaining the complaint as to the condition of legitimate daughter of plaintiff Elvira Juana Manuela Joaquina García Fernández and setting aside the declaration of heirship made in favor of the defendants and the records made in the registry of property in regard to the hereditary estate of García Villaraza, ordering a new partition of the estate with collation of the amount of fruits and rents, allowing fifteen days for that purpose and also adjudging that the defendants pay interest on the amount of the profits.

The present appeal was taken from that judgment.

The appellants, Josefa Aguayo and Graciela García, have filed a carefully prepared and concise brief.

The fifteen errors assigned by the appellants may be condensed into three different groups, each group containing those assignments which are similar.

Thus we find that the following assignments may be grouped together:

"1. The court erred in admitting in evidence the certificate of the entry reconstructed by the priest of Güira de Melena (Cuba) of the supposed marriage of the parents of the plaintiff as proof of that marriage.

"6. The evidence of the marriage does not comply with the provisions of the Civil Code and therefore the court violated section 53 of the Civil Code by admitting as evidence of a supposed canonical marriage contracted before the enactment· of the Civil Code a certificate of the reconstructed entry of that marriage.

"7. The court erred in not requiring previous to the admission of the certificate of a reconstructed entry of a supposed marriage as supplementary evidence of the original entry by destruction of the book containing it, evidence of the pre-existence of that entry in the destroyed book or the establishment of a presumption of the existence of that entry in the destroyed book.''

These three assignments refer to the admissibility of the document containing the canonical marriage certificate of Juan García Villaraza and Manuela Fernández. This document is the same one that was presented at the previous trial of this same suit and that was not admitted by the trial court. This Supreme Court in its majority opinion in *García et al. v. Aguayo,* 32 P.R.R. 392, quoted the objections made in the court below to the admission of that document as follows:

" 'We are going to make a lengthy objection to this document and, therefore, will dictate it to the stenographer. It is in fact the most important question in the case. We object to the admission of this document, first: Because it is not a transcript of the original marriage certificate appearing in the corresponding parochial archives and issued by the officiating priest at the time of the marriage and in the performance of his duty in the course of his employment or ministry. Second: Because the said original entry of the marriage in the corresponding book did not exist at the time the certificate was issued, and there is no proof that it existed at any time and had disappeared or was destroyed, which is the only case in which secondary evidence could be admitted, in accordance with sections 154 and 350 of the Civil Code and subdivision 1 of section 24 of the Law of Evidence; therefore, it is not admissible. Third: Because the alleged reconstruction of the entry in the marriage register was not made by competent authority, in this case the Bishop, or in the other proceedings, but is a new entry made in a provisional marriage register on October 2, 1913, after judgment had been entered in a previous suit between the same parties and upon the same issues as the present one, which judgment was rendered on April 25, 1908, and a few days before the commencement of this action on November 7,

1918, the said document having been prepared in a foreign country by a priest who neither performed nor was present at the alleged marriage and who was not the parish priest of Guira de Melena at the time, without the signature of any witness to the said marriage or other person who attended it, without mentioning the source of information of the priest who reconstructed the document, without hearing the parties interested or giving them an opportunity to be heard and without showing the authority of the said priest to make the new entry. Fourth: Because the said document is not only hearsay evidence of the worst kind but also self-serving evidence prepared (on October 2, 1918), and the said certificate was issued on the day following its preparation, or October 3. Fifth: Because the certified copy of the said document is not in form according to subdivision 8 section 69 of the Law of Evidence. Sixth: Because on the day when the marriage is said to have been performed there was in force in Cuba the law of civil register and from that date nothing could be admitted to prove a marriage but the certificate of the civil register and even if the marriage had been performed before the said law went into effect, in accordance with the statute then in force the entries of the parochial records should have been transcribed into the books of the civil register.' ''

### And this Supreme Court said:

''In our opinion the district court erred in refusing to admit the document and its error is still more apparent upon consideration of the testimony of Florencio García, a priest, who is learned in the canonical law and who was engaged not by the plaintiff but by the defendant Aguayo to ascertain personally whether the reconstruction of the marriage entry of the plaintiff's parents had been made in accordance with the canonical law. He testified that he knew personally the parish priest Luciano García and that he saw the original entry in the supplementary book prepared by reason of the fire that destroyed the archives during the last war between Cuba and Spain. The witness was not permitted to give an opinion or to describe the record from which the reconstructed entry had been copied, but notwithstanding the stubborn opposition of the defendants and the attitude of the court, his testimony shows the existence of the record that he saw.''

### And then on the same page the court said:

''It is argued that only the bishop of the diocese to which the parish belonged could reconstruct the entry. We entirely agree that

the bishop is the highest authority of the diocese and the only one who could order the reconstruction of parochial archives that had been destroyed, and it so appears from the document involved in this case. It is stated therein: 'And in compliance with the decree of the Right Reverend Bishop of the Diocese dated June 23, 1896, the archives of this church having been destroyed by fire on January 5, 1896, I, Rev. Luciano García y González, Acting Priest of the Parish, affix my signature thereto this second day of October, 1918.' And the certified copy issued by the parish priest was sent to the bishopric and there his signature was legalized by the official with power to do so.''

On page 398 of the same volume we find the following:

''Neither party has cited, nor have we been able to find, the exact text of the canonical law providing for the procedure to be followed for the reconstruction of parochial archives destroyed by fire or by any other cause, and that being the case it must be presumed that the order of the bishop was made in accordance with the law and was in the same manner complied with. When the supplementary book was formed and the entries destroyed were newly made in it, its entries took the character of originals and the official in whose custody they were could validly issue certified copies. The burden was on the defendants to show the invalidity of the document, if it was really so under the facts and the law. *Prima facie,* we repeat, it is valid and should have been admitted and given all the force that law and jurisprudence give to documents of that kind.''

In reality the foregoing three assignments of error are determined by the statements made in the said case of *García et al.* v. *Aguayo et al.* which contains the following declarations:

1. The entry certified to in the said document has the conditions of an original entry.

2. The certificate is issued by a functionary who has under his custody the books containing such entries and who was authorized to issue it validly.

3. The reconstruction of the said parochial archives was done by an ecclesiastical decree of the bishop of the corresponding diocese.

4. The legal presumption is that in the reconstruction and the issuance of the certificate the law was complied with.

The objections made in that case to the admissibility of the document were in reality dismissed by the admission in evidence of the document.

By comparing and checking the points of objection in the two cases we find that they are substantially the same, although they differ somewhat in their presentation and recital. We notice that some of the supposed defects pointed out in the marriage certificate are found also in the certificates presented by these appellants, such as document No. 2, pp. 69, 70 and 71, of the transcript in a proceeding in regard to the annulment of a marriage entry, which certificates are made in the same form as in that document, both as regards the ecclesiastical authority and the consular functionary. The same may be said of the certificate appearing on pages 74 to 78 of the transcript.

These three assignments of error should be decided negatively in accordance with the opinion cited.

The second assignment of error is as follows:

"2. The judgment is erroneous because it is contrary to the law of the case contained in the doctrine laid down by this court in an action between the same parties on the same matter which originated the present (Aguayo v. García, 11 P.R.R. 263) because the certificate of the entry of a supposed canonical marriage reconstructed by the parish priest of Guira de Melena (Cuba) in an ex parte proceeding does not constitute evidence of the marriage of the parents of the plaintiff."

It is true that this court rendered in *Aguayo et al.* v. *García* the judgment which apears in 11 P.R.R. 263–275. The documents offered in evidence by defendant Elvira García Fernández are mentioned in that decision and are as follows:

"The evidence presented in the action at the instance of Elvira, consisted of the following:

"1. A certificate of the baptism of Elvira, identical as to its contents to that attached to the complaint, and supplemented by the au-

thentication of the Consulate General of the United States in Havana, which authentication, dated July 14, 1905, sets forth that Father Gumersindo Rodríguez has charge of the archives of the Church of Nuestra Señora de Guadalupe, in the city of Havana.

"2. A certificate of the canonical marriage of Juan García Villaraza and Josefa Aguayo y Casals, celebrated in the city of Ponce on November 28, 1891, which certificate shows that Juan García Villaraza was the widower of Manuela Fernández."

No mention is made in the opinion in that case of the certificate of the marriage of Juan García Villaraza to Manuela Fernández which was not presented. The date of that certificate, October 2, 1918, is sufficient to show that it could not have been presented in that suit, which was decided on appeal on June 30, 1906.

That decision treats of the probatory value of some statements contained in the baptismal certificate of Elvira and the certificate of the marriage of Juan García Villaraza to Josefa Aguayo and contains the following:

"'The certificates of the baptism of Elvira and of the marriage of Juan García Villaraza to Josefa Aguayo, as all the documents in general, certify to the act which led to their execution, namely, the administration of the baptism and the celebration of the marriage on the dates stated; but they do not certify to the truth of the statement contained in them with respect to the filiation or civil status of the person baptised or married. Such is the legal doctrine found in the decisions of the Supreme Court of Spain on June 28, 1864, March 18, 1873, June 24, 1897, and July 13, 1899, which doctrine conforms to the provisions of section 1186 of the Civil Code in force. The real proof of the legitimate filiation of Elvira in a case like this, in which such filiation has been submitted to judicial decision, must be the proof of the marriage of her parents in a form admissible to law, and in terms which may leave no reasonable doubt thereof. The deposition of Elvira and the testimony of Esteban Vidal Ríos, as to statements made to them by Villaraza, do not legally prove her legitimate filiation.'" 11 P.R.R. 263–275.

But in the opinion in *García v. Aguayo,* 32 P.R.R. 392, the idea was perfected and the court cited *Ex parte Otero et al. v. People,* 27 P.R.R. 315; *Tardi v. Tardi,* 30 P.R.R.

209–215, and *Sison* v. *Ambalada,* 30 Phil. Rep. 118, wherein mention is made of the effects of certain statements contained in those documents and of those of the corroboration by other means of proof. In *Tardi* v. *Tardi, supra,* we find the following statements made by this court in referring to various baptismal, marriage and death certificates which were admitted:

"The mere naming of the said documents is sufficient to show their materiality in a case of this kind. It is clear that each of them alone does not establish all that was necessary to prove, but considered together and in connection with the testimony of the witnesses, they established the case of the petitioners."

We should remember that in the same case of *Tardi* v. *Tardi* are to be found in the opinion the two following paragraphs:

"The marriage of Juan Tardi to María Antonia Ramírez de Arellano must have taken place more than eighty years ago and that of Juan Adolfo Tardi to María Dolores Muñiz more than forty years ago. In the certificate of baptism of Tomasia made in the year 1840 it is made to appear that she was 'a legitimate child of Juan Francisco Tardi and María Antonia Ramírez de Arellano, married and residents of this parish.' In the death certificate of Juan Tardi of 1889 it was made to appear that he was a widower; that he had been married to María Antonia Ramírez de Arellano, and that he was succeeded by his legitimate children 'Rosalía, Adela and Adolfo Tardi y Ramírez.' In the death certificate of Rosalía, of her baptism in 1845, and of the death of Adolfo in 1898, the same reference is made to their status of legitimate children of Tardi and his wife. In his will made in 1888 Tardi said that he was 'married according to the rituals of the Roman Catholic Church to María Antonia Ramírez de Arellano, who bore him three children named Rosalía, married to Pedro Martínez, Adela, married to Antonio Franccioni, and Adolfo a widower.' And in the division of Juan Tardi's estate, in which the contestant participated as his natural son, the said marriage was taken as a basis. As to the lawful marriage of Adolfo Tardi to María Dolores Muñiz, reference is made to it in the certificate of baptism of María Edelmira in 1878 and of Eugenia Amelia in 1882, and in the birth certificate of María Ernestina, the petitioners. In these documents not only are their father and mother named, but also their

grandparents, Tardi and his wife. Besides, two witnesses testified without objection regarding the status of the petitioners as legitimate children of Adolfo Tardi y Ramírez.

"In the light of the principles laid down in the case of *Ex parte Otero et al.*, 27 P.R.R. 315, it is necessary to admit that the evidence examined is sufficient to show that Tomasia, known as Adela Tardi Ramírez, and Adolfo Tardi y Ramírez, were sister and brother, and that the petitioners are legitimate children of Adolfo and, therefore, the legitimate nieces of Tomasia, and this conclusion is not affected by the decisions of this Supreme Court cited by the appellant in the cases of *Aguayo et al.* v. *García,* 11 P.R.R. 263; *Estate of Díaz* v. *Estate of Díaz*, 17 P.R.R. 53, and *Dupont* v. *Aybar*, 25 P.R.R. 290. The circumstances were different in these cases."

Such is the doctrine of this court. In *García* v. *Aguayo*, 32 P.R.R. 392, this doctrine, or at least its practical consequence, was made firmer by holding that:

"It has been repeatedly held that documents of that kind are sufficient proof only of the act that caused their execution, but it can not be denied that in proper cases the statements contained in such documents have a certain probative force."

Thus a distinction is made between the full proof with relation to the fact which caused the execution and the quality of partial and concurring probatory element as to certain statements and facts related to or depending thereon. The former is sufficient of itself to determine certain particulars, and the latter is insufficient if taken singly, but sufficient if taken together with other proofs, to base thereon an opinion as to certain facts, or to be used as a basis for logical inferences which might support a belief.

We do not believe that the "law of the case" with reference to the present case can be found in the opinion in *Aguayo* v. *García,* 11 P.R.R. 263, for the reason, among others, that the circumstances of that case were not identical with those herein. In that case the certificate of the marriage of Juan García Villaraza and Manuela Fernández was not introduced in evidence. There the question was the weight to be given to the statements contained in certain

baptismal and marriage records, the inferences to be drawn from the statements and the scope and limitations of such inferences. But, at any rate the manner of viewing this question was clearly exposed in the opinion in *Tardi* v. *Tardi, supra,* and in that in *Garcia* v. *Aguayo,* 32 P.R.R. 392, and the opinion in the latter case is what might be considered as "the law of the case." It has been held repeatedly by the Supreme Court of the United States, by the Circuit Courts and by the Supreme Courts of the States that the decision on appeal or error is the law of the case in a subsequent case if the facts of the evidence are essentially the same. See American Digest, 1907 to 1916, 2nd. Dec. Ed. Vol. 2, Key Number 1195, 1.

As a question of law it was held by this court in *Garcia* v. *Aguayo,* 32 P.R.R. 392, that when the supplementary book is formed by reconstruction and the destroyed entries are again recorded therein, such entries have the character of originals and the official in charge of them is legally authorized to issue valid certified copies entitled to be admitted in evidence and to be given all of the force that law and jurisprudence accord to such documents. The logical and juridical consequence of this holding is that the certificate is admissible in evidence. The weight to be given to that evidence is another question. And that should be considered the "law of the case" in so far as it is held whether or not the said certificate should be admitted. In this connection should be considered what was held by this court in the case of *Rosado* v. *Ponce Ry. & Light Co.,* 20 P.R.R. 528, in which the case of *Wallace* v. *Sisson,* 114 Cal. 43, was cited.

The second assignment of error by the appellants is without merit.

The errors assigned in the brief of the appellants under numbers 4, 5 and 6 may be grouped and considered together. They read as follows:

"4. The court infringed the Law of Evidence not only in admit-

ting in evidence the said certificate, but in giving to it any probatory value whatever.

"5. The court erred, on the hypothesis that the certificate was admissible in evidence and had some probatory value, in admitting it and considering it effective against a third person who was not a party to the reconstruction proceedings.

"6. The proof of marriage presented is not in harmony with the Civil Code and therefore the court infringed section 53 of the Civil Code by admitting as proof of a supposed canonical marriage celebrated prior to the enactment of the Civil Code a certified copy of a reconstructed entry of that marriage."

If the document referred to is admissible in evidence and should be given the same effect and value as is given to all such documents, as held by this court in the case of *García* v. *Aguayo, supra,* it is needless to consider at length the argument on this point. It is already determined and there is no such error. As regards whether or not it was effective against a third person, it would be necessary to rate as third persons the heirs of Juan García Villaraza who succeeded to his rights and obligations in order to sustain the supposed error.

The argument on this point is based on suppositions which can not be admitted as grounds for a solution. Mention is made of the supposition that the reconstruction proceeding had been carried on properly and that there was a decree of the bishop approving and ordering the transcript. Such argument can not be sustained. Until shown otherwise, the presumption is that the law was observed and its mandates complied with. The presumption is that the proceeding was in proper form. There is a document, although it is not the basis of our decision, in that proceeding, though not included in the statement of the case, which is a certificate issued by the Chief Notary of the Archbishopric of Havana on December 18, 1926, in which it appears that the Archbishop of Havana rendered judgment on February 4, 1926, in a proceeding brought by Josefa Aguayo y Carols for the annulment of the entry of the marriage of Juan García

Villaraza to Manuela Fernández Perdigan celebrated in the parish of Guira de Melena on October 2, 1918, declaring that the marriage record was authentic under the law and entitled to all credit corresponding to similar documents. That certificate is attached to the record in this appeal, although not in the transcript, and consequently it is not considered as a ground for this opinion. There is no doubt that the procedure which should have been followed by Josefa Aguayo, or by any person who believed the certificate, the entry or its reconstruction to be void, was to attack the validity of the document before the proper court and secure a declaration of nullity, but not to declare its nullity as an argument in the litigation.

We do not find that the judgment of the Supreme Court of Spain of December 6, 1901, is applicable to the case. Of course, that judgment is not binding on the courts of Porto Rico; but for the purpose of consulting or as an illustration it would carry weight if there were similarity between the case decided there and the case before us. In that case there was a marriage *which appears only by decree of the Vicar.*

The error assigned under number 5 was not committed. For the same reasons stated in this and other assignments we do not agree to the existence of the error assigned under number 6.

There seems to be some confusion in the argument of the appellants on the seventh assignment. It refers to the necessity of showing the previous existence of the destroyed record to justify the presentation of the certificate which refers to the supplemental book. It so appears from the assignment of error. But in their argument the appellants deviate from the assignment of error and refer to the possibility that Juan García Villaraza and Manuela Fernández contracted marriage in Guira de Melena and to whether that marriage was void, citing section 75 of the Spanish Civil Code and a comment of Scaevola with relation to the canons of the Council of Trent relative to the intervention of the

parish priest in the marriage, to the impediment constituted by the previous adultery and to the nullity of canonical marriages contracted notwithstanding one of those impediments.

But we are confronted by this situation: In the first place the rule of section 75 of the Spanish Civil Code can not be applied to this marriage of Juan García Villaraza to Manuela Fernández which, according to the certificate, was contracted in 1883, or prior to the enactment of the Spanish Civil Code which was made extensive to Cuba and Porto Rico by Royal Decree of July 31, 1889, which fixed the time of its going into effect.

As regards the existence of impediments and the consequent nullity of the marriage, we believe that an action should have been brought for that purpose, and the only thing found in the answer is a denial of the marriage of García Villaraza to Manuela Fernández and the averment that at the time of the conception and of the birth of Rodulfo Manuel Abraham, García Villaraza was married to Carmen Bertran. That is not sufficient. An allegation of the nullity of a marriage should be made explicitly and clearly, stating the fundamental facts of such nullity and giving to the other party an opportunity to defend and submit evidence.

No action for nullity of marriage was brought in this case. And it could not have been brought by reason of the previous adultery committed by those who contracted marriage later, because it would have been affected by two real obstacles: 1. Because under subdivision 7 of section 84 of the Spanish Civil Code, reproduced in subdivision 5 of section 132 of the Civil Code of Porto Rico, *"adulterers who have been condemned by a final judgment"* can not contract marriage with each other. (Italics ours.) Without that judicial declaration and that penal sanction there was no incapacity. Furthermore, if the Spanish Civil Code be followed and if the marriage in this case was a canonical marriage, the action of nullity was, by virtue of the provisions of its sec-

tions 80 and 103, not within the jurisdiction of the civil courts. 2. Because the performance of the marriage by a priest not of the parish of the contracting parties should have been alleged and proved. Nor was the interpretation of the canonical law so rigid as appears to be supposed, as is shown by the decree on espousals and marriage published by the Sacred Congregation of the Council of August 2, 1907, which, in referring to the intervention of the parish priest says:

"They act lawfully when they know also that the place of the marriage was the domicile, or at least the residence for a month, of either of the parties to the marriage."

So that the mere residence for one month at the place of the marriage was sufficient to give the parish priest jurisdiction as such priest of that parish. That provision, although enacted after the time of the canonical marriage involved, reveals the spirit of the canonical construction.

In any event, the problem would arise of whether that marriage, in case it should have been declared void and contracted in bad faith in a proper proceeding, would produce no civil effects as to the children born thereof. If we follow the Spanish Civil Code herein cited by the appellants, its section 69 provides that a marriage contracted in good faith produces civil effects, although it may be declared void. If good faith existed on the part of one of the spouses, it produces civil effects with regard to that spouse and the children. And if both spouses acted in bad faith, it produces civil effects with respect to the children. The Spanish Code partly followed and partly amplified the doctrine which was the basis of the Law of Civil Marriage of 1870. In accordance with sections 94 and 95 of that code a void marriage contracted in good faith produces civil effects while it lasts, and the legitimacy of the children; and in the case of good faith on the part of one of the spouses it produces them in regard to that spouse and the children. The Code went

further than the Law of Civil Marriage, and in section 69, more adjusted to invariable rules of justice than to precepts of legislative necessity, declared that in cases of voidable marriages where there was bad faith on the part of both spouses, the marriage should produce civil effects in relation to the children.

In his commentaries on section 69 of the Spanish Civil Code Scaevola said:

"Good faith being the determinant requisite of the civil effects of the marriage declared void, the law had to establish a rule on the existence or nonexistence of that requisite and therefore establishes the rule that good faith is to be presumed until the contrary is shown. The existence of bad faith must be shown and so long as this is not shown the marriage is presumed to have been contracted in good faith. In the present case good faith is understood to be the ignorance of the cause producing the nullity. What are the effects referred to in that section? All of the effects produced by a valid marriage, but only while the voidable marriage lasts, because when its nullity has been declared the effects thereof are set forth in sections 70, 71 and 72. Section 94 of the Law of Civil Marriage was more explicit when it said: 'It shall produce all civil effects while it lasts.'

"These effects which refer either to the person or to property, vary according to the cases affected by the section.

"When there is good faith on the part of both spouses the children are legitimate and the parents have the *patria potestas* . . . .

"If there is good faith on the part of only one of them, the children are also legitimate, but the *patria potestas* will be given exclusively to the innocent spouse . . . .

"If there is bad faith on the part of both spouses, the marriage will produce civil effects only with respect to the children: that is, they will be legitimate and shall enjoy all of the rights recognized by law in that kind of children."

As asserted by the appellants, the record does not give the residence of Juan García, but says that Manuela Fernández is of "this parish." But the appellants affirm that that matter has not been proved. We do not believe that the marriage record should contain proof of domicile or residence of the parties to the marriage. That is a fact

stated in the certificate by the parish priest who had ascertained its truth, but which he was not bound to prove.

The argument in regard to this assignment is conducted without reference to its contents, that is, on different grounds.

We think it unnecessary to consider here those which refer to the possession of status and when that can be proof of marriage when we have given our conclusions on the marriage certificate and its effects. The same can be said of the presumption *juris tantum* established by the Law of Evidence that two persons who conduct themselves as man and wife are really so.

The ninth assignment is as follows:

"The court erred in not finding that the possession by the defendants of the house in question was in good faith until the complaint was filed in this case."

Considering the testimony in this case, especially that of the defendants, and remembering the statement contained in the certificate of the marriage of Juan García to Josefa Aguayo that García was the widower of Manuela Fernández who died on May 24, 1891, it seems to us very difficult to sustain that the defendants were ignorant of the possibility of the rights of the plaintiff and held possession in the belief that there was no adverse right to their full possession of the estate of Juan García Villaraza. We notice particularly the answer of Graciela García in which she says, referring to the plaintiff, that the witness considered her as her sister, and that now she considers her as her half-sister, and that likewise she holds him (Rodolfo) to be her half-brother.

The error assigned under number nine was not committed.

Nor did the lower court err in overruling the plea of *lis pendens.* Everything relating to this plea was decided by this court in *García et al.* v. *Aguayo et al.,* 32 P.R.R. 392, where it was said:

"For the same purpose we will say that in our opinion the plea of *lis pendens* and the questions of third person and limitation of the action are without merit."

The next assignment of error is as follows:

"The court erred in not settling the question (assuming the possession in bad faith of the defendants) of the profits and rents produced by the house, the expenses allowable to the defendants and the balance corresponding to the plaintiff, and in ordering the defendants to pay to the plaintiff as damages the interest on the profits which they should refund."

From the part of the opinion of the court which is copied on pages 53 and 54 of the appellants' brief the situation clearly appears. It says:

"As to the fruits claimed we lack a firm basis for determining the amount and value thereof, not only because they depend on the hereditary share to be allotted to the plaintiff in the distribution, but because the evidence heard in this case does not furnish us with a sure foundation for calculating the total amount of the fruits or rents. It is alleged by the plaintiff that the house referred to in the complaint has produced some times from 75 to 100 dollars and now is rented for 200 and some dollars. The defendants have submitted to us an account of the receipts and expenditure of the management of the property, which account has not met with the approval of the plaintiff in its results, and although counsel for the defendants has offered to bring the receipts and vouchers of the account and witnesses in support thereof, that evidence has not been submitted, and we think that the proper thing to do in furtherance of justice is to make a full liquidation of the fruits so as to determine the amount thereof, allotting to the plaintiff her proper share proportionate to her hereditary share. That liquidation must be made within fifteen days after this judgment becomes final, for which purpose the defendants shall furnish the proper vouchers and relevant proof for the purpose of determining with the greatest accuracy the total amount of said fruits. As to the damages, we have no proof for fixing their amount, although we are of the opinion that the plaintiff is entitled to receive from the defendants legal interest on the amount due her by reason of the fruits from the death of García Villaraza until its final payment."

The court has not before it sufficient information for making a liquidation free from error, and orders that it be made. That is entirely the right of the court. In regard to the payment of interest on the amount to which the plain-

tiff may be entitled, it is a fact that the claim of the plaintiff for damages amounted to $22,800 and the court allows her the profits and interest on that amount at 6 percent annually.

Really, even viewed in the light of section 1075 of the Civil Code, this part of the judgment has no possible justification. The payment of the amounts resulting from the liquidation is the only allowance that can be made to her. No interest can be allowed on sums not seasonably claimed and not yet ascertained. In this connection it is well to remember the provisions of section 1067 of the Civil Code of Porto Rico referring to default.

We agree that error was committed in allowing interest on the profits.

In the assignment of error under number 12 we are of the opinion that the appellants are mistaken.

The assignment reads as follows:

"The court erred in not deciding expressly the claim of the plaintiff to certain houses built by the defendants with the profits from the inherited house and in imposing the costs on the defendants."

Referring to the failure to decide the claim of the plaintiff to certain houses built by the defendants with the profits from the estate, at first sight one is struck by the fact that it is not the plaintiff but the defendants who complain of that omission. It would seem that their reason for doing so is that they desire to clarify definitely the proximate and future situations. But after the profits have been allowed by the court, the granting of the other prayer of the plaintiff would be an evident injustice.

The citations made in the brief in arguing that assignment indicate the exact position of the trial judge who in ruling on the motion to dismiss expressly the third cause of action in regard to property acquired by Josefa Aguayo with the rents of the estate said:

"Referring to the second question, we understand that the fact that the court has made no pronouncement on that question in its

judgment leaves it to be supposed that it was dismissed as to those particulars.''

There is a second question involved in this assignment: that of the imposition of costs. The appellants set up various grounds. The first is the dismissal of the third cause of action, the very one that has been mentioned in this assignment and whose decision seems to be admitted. It is argued, among other things, that the defendants rely on judgments of this court; that they have acted in good faith, and that the questions presented in this suit are new and difficult.

We do not see that any judgment of this court, if the appellants refer to the suits among themselves, or the declaration of heirship encourages or authorizes lawsuits or excuses the tenacity of these or any other litigants; nor do we find ground for holding that the good faith of the defendants is evident. As regards the legal questions which are new and difficult, experience justifies the belief that in every litigation the same statute and the same legal precept may appear, in the light of the facts and circumstances, as presenting different aspects and phases; but in reality the legal rule is essentially always the same and always invariable.

We do not see that the ruling of the lower court in regard to the imposition of costs has been attacked on the ground of abuse of judicial discretion or manifest error, partiality, prejudice, or is the result of influence or passion.

We hold that there is no error under this assignment.

We find no argument on the thirteenth assignment of error which is stated as follows:

''The court erred in refusing to admit in evidence the certificate of the Vicar of the Bishopric of Havana to show that it was customary in the said bishopric to order the reconstruction of the entry of a marriage record without prejudice to third persons and the birth certificate of the supposed daughter of Juan García Villaraza and Carmen Bertrán called Sara.''

Two more errors are assigned under numbers 14 and 15 which are argued as one. They read as follows:

"14. The court erred in admitting the death certificate of Juan García Villaraza in order to prove that he was married.

"15. The court erred in allowing witness Piña to testify about public opinion of the relationship of the plaintiff's parents."

We understand that the decision of this case was not based on the fact stated in the said death certificate, and as regards the testimony of witness Piña mentioned in the statement of the case as given on direct examination and on cross-examination by the defendants, we have not found there the objections and exceptions required; 'but have found a broad and detailed cross-examination. The following appears from a bill of exceptions:

"8. The defendants moved to strike out the testimony of witness José C. Piña. The court overruled the motion and the defendant excepted."

We understand that the objection should be made and the exception taken for the reasons stated, thus giving the court an opportunity to avoid error and the parties an opportunity to argue and defend or withdraw the evidence. The grounds for the objection and exception are not given and we can not hold that they were made and taken correctly.

The assignments under these numbers are without merit.

For the foregoing reasons the judgment rendered in this case should be affirmed, except as regards the allowance of interest on the income, which is reversed.

Justices Wolf and Aldrey dissented as to the affirmance.

### DISSENTING OPINION OF MR. JUSTICE ALDREY

The history of the controversy between the parties to this suit, in which they have been at times plaintiffs or defendants, may be seen in the opinions of this court appearing in volumes 11 P.R.R. 263; 29 P.R.R. 954; 32 P.R.R. 392; 34 P.R.R. 491, and 35 P.R.R. 875.

A proceeding for the declaration of heirship was begun in 1899 by Josefa Aguayo in order that her daughter be declared sole heir of Juan García Villarraza. This proceeding was followed shortly afterward by a suit brought by Josefa Aguayo against Elvira and Rodolfo García Fernández in order that it be declared that they were not legitimate children of Juan García Villarraza and that they were not entitled to inherit from him, as they claimed. The defendants in said suit also claimed that they were legitimate children as appeared from their birth certificates, although later Rodolfo acquiesced in the complaint. The judgment therein rendered was reversed by this court in 1906 and a new trial ordered. Nothing was done after that date, and twelve years later, or in 1918, the real controversy between the parties was begun in a suit instituted by Elvira García against Josefa Aguayo and her daughter to declare that she was entitled to inherit from Juan García Villarraza, inasmuch as she was his legitimate daughter, that is to say five years before our judgment was rendered in 1923 in the complaint brought by Elvira García (32 P.R.R. 392).

The basic controversy for decision is whether the plaintiff Elvira García has shown that her mother Manuela Fernández Perdigón contracted marriage with Juan García Villarraza, and consequently whether she is a legitimate daughter entitled to inherit from the said Juan García Villarraza. To show the said marriage a reconstructed entry of the said marriage was produced in evidence, which entry we are not quoting literally as it has been transcribed in volume 29, page 957, of our decisions. It is, in a few words, a certificate issued by the acting priest of the Parish of San José de Guira de Melena, Province and Diocese of Havana, Republic of Cuba, expressing that in an auxiliary register of marriages of the said parish there is the matrimonial entry of Juan García Villarraza and Manuela Fernández Perdigón, as celebrated on November 29th, 1883, by Rev. Rafael Asunción Toumil y Zapela, the then curate of said church, and

that in compliance with the decree of the Bishop of the Diocese issued June 23, 1896, due to the reason that the archives of said church had been destroyed by fire on January 5th of said year, he signs the certificate on October 2, 1918. The signature and paraph of said certificate were certified to as being identical to those used by the said priest as the Archdeacon of Havana and the signature of this ecclesiastical officer was certified to by the Consul General of the United States at Havana, Republic of Cuba, as true and genuine.

From the reconstructed entry to which we have referred it appears that the Bishop of the Diocese decreed in 1896 that the archives of Guira de Melena be reconstructed, but the steps taken to reconstruct the entry of said marriage do not appear therein, or that they were approved by the Bishopric, or that the latter ordered the record as a result of said steps, or in what the investigation consisted; and from the evidence that has been adduced by the defendant it appears that no evidence was presented to show that there existed in the said parish any entry of the marriage of Manuela Fernández Perdigón and Juan García Villarraza prior to the fire, and no certificate was even presented of the entry which it is claimed existed, but the investigation practiced by the parish priest consisted in the appearance of Elvira García, who, without being sworn, testified, referring to facts which occurred before her birth, for which reason she could not have a personal knowledge of them, namely that her parents were married in the said parish on November 29th, 1883, of the priest who celebrated the marriage, of the witnesses, groomsman and bridesmaid who intervened, as well as of other particulars which we are now omitting as unnecessary; and to show those facts, which occurred fifteen years before, she presented two witnesses whose exact ages do not appear for they have limited themselves to stating that they are of full age, and under oath having read to them the testimony of Elvira García stating

that as they were neighbors they knew that everything that the petitioner said was true.

The entry in an archive is the primary evidence of its contents and for that reason I understand that in order that said entry be reconstructed, substituting it by another as suppletory of the former which has been destroyed, it is an essential pre-requisite to show that the former entry existed in the record which was destroyed, and in this case it was neither alleged nor shown before the parish priest that the matrimonial entry to which we have been referring existed in the parochial archive destroyed by fire. The witnesses who testified in the reconstruction proceeding of the matrimonial entry limited themselves to stating that they were of full age, while in this case it was necessary to know their age in order to weigh the value of their testimony with regard to facts which had occurred fifteen years before; and especially, they did not say that they knew personally that the said marriage was celebrated on the date alleged or that the said entry existed in the parochial archive, but that they knew that what Elvira García had said was true due to their proximity, such evidence being, therefore, hearsay. The Codex Juris Canonici admitted in evidence, promulgated on May 27, 1927, in force since May 19, 1918, that is prior to the commencement of the said proceeding on October 2, 1918, denies probative value to that kind of testimony in sections 1772, 1789, 1790 and 1791, which are commented on in the treatise of Rev. Juan B. Ferreras on Canonical Institutions, vol. 2, pages 343, 347 and 733.

Furthermore, the said proceeding being in the nature of an *ad perpetuam rei memoriam* proceeding, had to be approved by an ecclesiastical authority. The sole fact of the testimony given is not enough, the opinion to be formed thereof was necessary, and in this case no ecclesiastical authority approved the reconstruction of the matrimonial entry, which function corresponded to the Vicar General of the Bishopric in the name and in representation of the Bishop,

inasmuch as it was a proceeding of voluntary jurisdiction. Ferreras, *supra,* vol. 1, page 272. In the case of *García* v. *Garzot,* 18 P.R.R. 835, which was a case of an ecclesiastical proceeding instituted in 1892 for recording in a parochial record the baptism of a boy born in 1872, the testimony was taken by the parish priest by authority given him by the Bishop, and the proceeding was approved by the Bishopric, which authorized the priest to make the entry of the birth and baptism. That case indicates that the approval of the Bishop is necessary in such proceedings. In a suit brought in Spain a marriage was attempted to be shown not by the contemporaneous entry, but by the entry made years later by virtue of a proceeding carried on by order of the Bishop, approved by the provisor and by the vicar, and the Supreme Court by judgment of December 6, 1902, 92 Jurisprudencia Civil 560, gave no value to the said document, declaring that said entry could not be taken for the sacramental entry of a marriage made by the attending priest in the corresponding register. It is true that said judgment is not obligatory on us, but its declaration of the doctrine may be taken into account.

The certificate of the Bishopric that the signature of the priest of Guira de Melena appearing in the certificate presented in evidence is genuine is not the approval of the proceeding instituted for the reconstruction of the matrimonial entry, as it is declared in the opinion of the majority of this court, and it is quite so plain that the reconstructed entry was made in the parochial registry before the issuance of said certificate. No one approved that proceeding.

I do not agree that in deciding this appeal reference may be made to a document which was not presented before the lower court, or even when saying in the opinion of the majority that no fundamental character is given to it.

While the complaint was based on the fact that the plaintiff is the daughter born of the marriage contracted by Manuela Fernández Perdigón and Juan García Villarraza in

1883, the entry of which when presented is sufficient by itself, and no corroboration is necessary, nevertheless, evidence was offered and admitted of the marriage status between the two persons, the testimony of a single witness, Piña, being offered for that purpose, who stated that he knew said persons to be living together as husband and wife from 1883, but explained his averment by saying that he had seen them as such in a celebration held in Cuba by reason of the Peace of Zanjon, in which several ladies took part, among them Manuela Fernández, the wife of García Villarraza; but as the said historical event did take place in 1878, when Carmen Beltrán, the then wife of Juan García Villarraza, was alive, such testimony can have no value to show the marriage status. No value can be given to the statements of Juan García Villarraza when contracting marriage with Josefa Aguayo with regard to the fact that he was the widower of Manuela Fernández Perdigón or to the statements made by him in the birth certificate of the plaintiff relative to the fact that she was the legitimate daughter born of his marriage with Manuela Fernández Perdigón, they not meriting credit, inasmuch as he falsely said also that Rodolfo was a son born of the marriage with Manuela when the truth is that he was at the time married to Carmen Beltrán.

For the foregoing reasons I am of the opinion that the judgment appealed from should be reversed and the complaint dismissed.

I am authorized to say that Mr. Justice Wolf concurs in this opinion.